UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| THOMAS W. FARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:16-CV-387-TAV-HBG |
| | ) | |
| CENTURION OF TENNESSEE, | ) | |
| CORIZON, INC., | ) | |
| JOSEPH CRUMP, | ) | |
| DR. NINER, | ) | |
| DAN WALKER, and | ) | |
| LYNNDY BYRGE, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This is a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 that is proceeding as to Plaintiff's claims that Defendants Crump, Walker, Byrge, and Niner were deliberately indifferent his serious medical needs in violation of his Eighth Amendment rights in accordance with a custom or policy of Defendants Centurion and Corizon [Doc. 13 p. 5–9].  While Defendants Walker and Niner have not yet answered, all other Defendants have filed motions for summary judgment [Docs. 56, 68, 70, and 73], Plaintiff filed responses in opposition to those motions [Docs. 65, 81, 83, 84] and Defendants Crump, Centurion, and Byrge filed replies [Docs. 67 and 85].

For the reasons set forth below, the pending motions for summary judgment [Docs. 56, 68, 70, and 73] will be **GRANTED** and all other pending motions and objections

[Docs. 51, 76, 82, 91, and 92] will be **DENIED and/or OVERRULED as moot**, as only Plaintiff's claims against Defendants Niner and Walker will remain.

## I. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010).

## II. PROCEDURAL HISTORY

The Court has previously summarized the procedural history of this case as follows:

> On June 24, 2016, Plaintiff, a former inmate at the Morgan County Correctional Complex ("MCCX"), filed a civil-rights complaint under 42 U.S.C. § 1983 against the following entities and persons: private medical-care providers Centurion of Tennessee, LLC and Corizon, Inc.; physicians Dr. Crump, Dr. C. Singleton, and Dr. Niner; MCCX Health Administrators Dan Walker and Lynndy Houston-Fagan; MCCX Job Coordinator Rhonda Armes; MCCX Warden Shawn Phillips; MCCX Deputy Warden of Treatment Stanton Heidle; and Tennessee Department of Corrections ("TDOC") Medical Director Kenneth Williams [Doc. 2, at 1].

> Upon initial screening of Plaintiff's complaint, the Court concluded that Plaintiff had failed to allege the deprivation of any constitutionally protected right, privilege or immunity against any defendant, and dismissed the action sua sponte for failure to state a viable § 1983 claim [Doc. 5]. Plaintiff appealed. On June 5, 2018, the Sixth Circuit Court of Appeals affirmed this Court's judgment to the extent it dismissed the claims against Singleton and Williams, but vacated that judgment to the extent it dismissed Plaintiff's claims against Centurion, Corizon, Walker, Houston-Fagan, Dr. Crump, and Dr. Niner [Doc. 13 p. 9]. In particular, the Sixth Circuit concluded that Plaintiff's complaint: (1) sufficiently states an Eighth Amendment claim against Corizon and Centurion based on a policy of providing less than adequate medical care to save money; (2) sufficiently states an Eighth Amendment claim of deliberate indifference claim against Dr. Crump; (3) sufficiently states Eighth Amendment claims against Walker and Houston-Fagan for the denial of "reasonable requests for medical treatment in the face of an obvious need for such attention;" and (4) sufficiently states an Eighth Amendment claim against Dr. Niner for delayed medical treatment [Doc. 13, at 4–9].

[Doc. 35 p. 2–3].

### III. RELEVANT UNDISPUTED FACTS

First, neither Plaintiff's complaint [Doc. 2] nor his responses in opposition to the motions for summary judgment [Docs. 65, 81, 83, and 84] are sworn. Accordingly, the Court will not consider Plaintiff's assertions in these filings in determining whether a genuine issue of material fact remains in ruling on Defendants' motions for summary judgment. Fed. R. Civ. P. 56(c)(4); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991) (providing that a court may not consider unsworn statements when ruling on a motion for summary judgment); *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008)

3

(holding that a sworn complaint carries the same weight as an affidavit for purposes of summary judgment).

The Court will, however, consider the undisputed facts regarding Plaintiff's medical treatment that are supported by Plaintiff's statements in his sworn deposition, Plaintiff's sworn medical records,[1] the affidavit of Jeffrey Scott King [Doc. 69-4], and Plaintiff's statements in the record that support Defendants' motions for summary judgment. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (providing that where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a party moving for summary judgment may rely solely on pleadings and admissions on file, among other things).

Thus, the Court finds that the relevant undisputed evidence in the record for purposes of the pending summary judgment motions includes the following:

1. In 2012, while Plaintiff was incarcerated in the Morgan County Correctional Complex ("MCCX"), Dr. Chasidy Singleton saw Plaintiff for his glaucoma issues and ultimately performed a surgical "trabeculectomy" for those issues which left a "diffuse bleb" on Plaintiff's left eye [Doc. 56-3 p. 18–28];

2. In January 2013, Defendant Dr. Crump saw Plaintiff for a follow up appointment regarding Dr. Singleton's eye operation [Doc. 73-1 p. 5];

3. In February 2013, Defendant Dr. Crump again saw Plaintiff because he "was starting to have trouble" with his left eye [*Id.* at 5, 49];

---

[1] In support of his motion for summary judgment, Defendant Dr. Crump did not file an affidavit, but instead filed a sworn copy of portions of Plaintiff's medical records [Doc. 56-3] and portions of Plaintiff's deposition [Doc. 66-1]. While counsel appears to interpret these notes in his memorandum in support of the motion for summary judgment, some of his interpretations go beyond what is apparent to the Court from the face of the medical records [Doc. 57 p. 3–5]. However, in the absence of any sworn proof in the record to support these interpretations, the Court will rely only on the information that is apparent from the face of the sworn medical records for purposes of summary judgment.

4

4. Defendant Dr. Crump told Plaintiff that he put in a request for Plaintiff to get a consult for of his bleb in February 2013 that was denied, but no record of any such request exists [*Id.* at 5, 49];

5. In April 2013, Defendant Dr. Crump again saw Plaintiff and he complained of "left eye irritation" without discharge and his eyelids were swollen with increased redness and starting to get worse [*Id.* at 57];

6. Prior to June 2013, Plaintiff's discomfort in his left eye was "minor" [Doc. 69-1 p. 3];

7. On September 8, 2013, Defendant Corizon stopped providing medical services at MCCX [Doc. 69-4 p. 2];

8. On October 9, 2013, Defendant Dr. Crump again saw Plaintiff for his eye issues, noted that Plaintiff's left eye blister/bleb was "doing well," and continued some eye treatment for Plaintiff [Doc. 56-3 p. 5];[2]

9. On November 13, 2013, Defendant Dr. Crump again saw Plaintiff for his eye issues, noted that Plaintiff's left eye was "some better," and again prescribed treatment for Plaintiff's left eye [*Id.* at 4];

10. In 2013, Defendant Dr. Crump attempted to conservatively treat Plaintiff's bleb with eye drops despite telling Plaintiff that he did not treat blebs because he is an optometrist [Doc. 73-1 p. 56];

11. On January 8, 2014, Defendant Dr. Crump again saw Plaintiff and noted that Plaintiff's "bleb look[ed] good" [Doc. 56-3 p. 3];

12. On February 19, 2014, Defendant Dr. Crump again saw Plaintiff and noted that Plaintiff's left eye was "much better" and requested a "referral to Oak Ridge MD for fu bleb evaluation" [*Id.* at. 2];

13. In April 2014, Plaintiff saw Dr. Singleton for a follow up appointment at which time she wrote a letter to TDOC stating that while Plaintiff's filtering bleb was "causing [Plaintiff] ocular irritation," there was "no evidence of bleb leak or infection," recommending that Plaintiff receive drops and gel

---

[2] Defendant Dr. Crump notes in his memorandum in support of his motion for summary judgment that Plaintiff states in his complaint that he also saw Defendant Dr. Crump in May of 2013 and twice in June of 2013, but it is unclear whether Defendant Dr. Crump agrees that these visits occurred and no party has cited any proof that any such visits occurred or what, if any, treatment Defendant Dr. Crump provided Plaintiff therein [Doc. 2 p. 7; Doc. 57 p. 3 n.2].

ointment, and stating that Plaintiff should follow up at the Nashville General Eye Clinic in one month for "automated visual field testing" and a recheck of his "intraocular pressures and anterior segment of both eyes" [*Id.* at 11–12];

14. On July 16, 2014, Defendant Dr. Crump filled out a request for Plaintiff to be referred to an ophthalmologist for "surgical correction" of Plaintiff's "abnormally large" filtering bleb because it was "causing irritation" and "some dry eye" which was "not helped by artificial tears, gels or ointments," and this request was approved August 8, 2014 [*Id.* at 8, 10];

15. On December 10, 2014, Defendant Dr. Crump made a note in Plaintiff's medical records in which he requested a "check up on ophthalmology follow-up at SPNDS approved 8/8/14 (in records)" [*Id.* at 6];

16. In February 2015, Plaintiff had an appointment to see Dr. Singleton that was cancelled due to bad weather and he therefore saw Dr. Singleton in April 2015 instead, at which time she decided not to surgically remove the bleb on Plaintiff's left eye because his vision and eye pressure in that eye were good and she was concerned about possible complications [*Id.* at 6; Doc. 73-1 p. 24–27; Doc. 2 p. 11];

17. At Plaintiff's April 2015 appointment, Dr. Singleton also agreed to refer Plaintiff to an eye specialist for an appointment in June 2015, but Plaintiff did not see a specialist pursuant to this referral prior to June 23, 2015 [Doc. 56-3 p. 6; Doc. 73-1 p. 24–27];

18. When he woke up on June 23, 2015, Plaintiff had lost about half of his vision in his left eye, his eye was dark, he "was seeing these black squiggly things," and his eye was hurting [*Id.* at 31];

19. Accordingly, on June 23, 2015, Plaintiff told Defendant Dr. Niner that he had an emergency, and Defendant Dr. Niner agreed that it looked serious and told Plaintiff that he would refer him to see Defendant Dr. Crump the next day [*Id.* at 32];

20. On June 24, 2015, Plaintiff was not called to see Defendant Dr. Crump, but when he went to the infirmary around 1 p.m., an officer told Plaintiff that Defendant Dr. Crump had already left for the day. Plaintiff then found Dr. Lane and explained his situation, Dr. Lane discussed Plaintiff's eye condition with Defendant Dr. Crump, who recommended transfer of Plaintiff to an

ophthalmologist, and Plaintiff was ultimately taken to an emergency center [*Id.* at 36–41; Doc. 56-3 p. 7];

21. Plaintiff received eye drops to treat the irritation he experienced due to the bleb in his eye during the time period underlying his complaint, but asserts that he "needed that bleb corrected or removed, and [] couldn't get it done," "want[ed] to get [the bleb] removed because it was so irritating . . . and because of his appearance," and "did not receive the appropriate care that [he] needed . . . or the proper treatment [he] needed" [Doc. 73-1 p. 27–28, 47–48];

22. Plaintiff believes that Defendant Dr. Crump "went above and beyond what he could do" in attempting to treat Plaintiff's bleb and "seemed to be the only one that realized [Plaintiff] really did need some help . . . . and he did what he could do, but he couldn't do too much," though Plaintiff questions why Defendant Dr. Crump did not tell Defendant Byrge that Plaintiff really needed help or ask his friend who was an ophthalmologist about how to treat Plaintiff's bleb [Doc. 66-1 p. 4–6];

23. Defendant Centurion "does not have a policy in place that results in 'deliberate indifference' to Plaintiff's or any other inmates['] medical need" [Doc. 84 p. 1–2]; and

24. Plaintiff has not sued any Corizon employees [Doc. 69-4 p. 2].

## IV. ANALYSIS

A prison authority's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–5. Establishing a deprivation of a federal right in the Eighth Amendment medical context requires evidence that that acts or omissions of an individual operating under the color of state law were "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Deliberate indifference is equivalent to

"subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor may not be liable under § 1983 unless the he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

However, "[a] patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition" is insufficient to support claim for deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment, as "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Thus, while a doctor's treatment may violate the constitution where it is "so woefully inadequate as to amount to no treatment at all," federal courts are "generally reluctant to second guess medical judgments." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1975)).

Also, for a corporation acting under state law to be liable for a violation of constitutional rights, the plaintiff must establish that the corporation's custom or policy was the moving force behind that violation. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (holding that a private corporation acting under color of state law may not be liable under § 1983 for constitutional violations based upon a theory of *respondeat*

*superior*, but rather may be liable only where its custom or policy caused a constitutional violation) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

### A. Defendant Byrge

Plaintiff's claim proceeding against Defendant Byrge arises out of his allegation that she and/or Defendant Walker "denied his physicians' requests for referrals to eye specialists" [Doc. 13 p. 8]. However, in support of her motion for summary judgment, Defendant Byrge filed an affidavit in which she testifies that she was not responsible for Plaintiff' medical care, did not make any decisions regarding that medical care, and was not deliberately indifferent to any of Plaintiff's serious medical needs during the time period underlying Plaintiff's complaint [Doc. 70-1 p. 1–2]. In his response to Defendant Byrge's motion for summary judgment, Plaintiff attempts to dispute this by asserting that Defendant Byrge had knowledge of his serious eye condition, eye specialist appointments, and his medical providers' related treatments, findings, and referrals and therefore should have ensured that he received proper care for this condition [Doc. 84 p. 7–8]. However, as set forth above, both Plaintiff's complaint and his response to Defendant Byrge's motion for summary judgment are unsworn and therefore insufficient to establish that a genuine issue of material fact remains for purposes of summary judgment. *Dole*, 942 F.2d at 968–69.

As Defendant Byrge has met her burden to set forth proof that she did not violate Plaintiff's Eighth Amendment rights during the relevant time period underlying Plaintiff's complaint and Plaintiff has not set forth any evidence from which a reasonable jury could

9

find that she did, Defendant Byrge's motion for summary judgment [Doc. 70] will be **GRANTED**.

B.     **Defendant Dr. Crump**

Defendant Dr. Crump seeks summary judgment on Plaintiff's claims against him on the grounds that (1) they are time-barred; (2) Plaintiff did not properly exhaust his administrative remedies; and (3) the sworn medical records establish that he was not deliberately indifferent to Plaintiff's serious eye condition [Doc. 57]. As the Court finds that Defendant Dr. Crump has met his burden to set forth proof that he was not deliberately indifferent to Plaintiff's eye condition and Plaintiff has not cited any evidence that would allow a reasonable juror to find in Plaintiff's favor on this claim,[3] the Court will not address his remaining arguments.

---

[3] In his unsworn responses to Defendant Dr. Crump's motion for summary judgment, Plaintiff repeatedly alleges that Defendant Dr. Crump's treatment of his eye condition was negligent and requests to amend his complaint to add such claims [Docs. 65 and 81]. Also, in both his pretrial narrative statement and his second response in opposition to Defendant Dr. Crump's motion for summary judgment, Plaintiff requests that the Court add Chasidy Singleton back in as a defendant herein based on her acts of placing a blister on Plaintiff's eye and Plaintiff's allegation that she failed to treat and correct this bleb [Doc. 80 p. 6; Doc. 81 p. 5–6]. However, the Court previously dismissed Plaintiff's claims against Chasidy Singleton and his negligence claims against all Defendants for failure to state a claim upon which relief may be granted under § 1983 [Docs. 5 and 6] and the Sixth Circuit affirmed [Doc. 13 p. 4–6]. Moreover, Plaintiff has not set forth grounds for the Court to alter or amend its dismissal of these claims under Rule 60(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 60(b); *Leisure Caviar, LLC v. U.S. Fish & Wildfire Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (providing that "[w]hen a party seeks to amend a complaint after an adverse judgment . . . . the claimant must meet the requirements for reopening a case established by Rules 59 or 60"). Accordingly, these requests are **DENIED**.

The undisputed evidence in the record[4] establishes that the medical care Defendant Dr. Crump provided Plaintiff was not so inadequate that it was equivalent to no care at all. Rather, Defendant Dr. Crump repeatedly attempted to treat Plaintiff's symptoms related to his bleb and repeatedly referred Plaintiff to an ophthalmologist for treatment of this condition. Moreover, while Plaintiff disagrees with the manner in which Defendant Dr. Crump treated his left eye, he does not dispute that Defendant Dr. Crump took the steps that he could take to abate Plaintiff's left eye issues. Accordingly, no genuine issue of material fact remains as to Plaintiff's claim against Defendant Dr. Crump and Defendant Dr. Crump therefore is entitled to summary judgment.

Specifically, as set forth above, the undisputed evidence in the record establishes that Plaintiff admits that his eye issues were "minor" from prior to June of 2013.[5] Moreover, Plaintiff acknowledges that in 2013, Defendant Dr. Crump attempted to treat Plaintiff's left eye issues by prescribing drops and/or gels. Also, the medical records establish that when Defendant Dr. Crump saw Plaintiff during 2013, he observed that Plaintiff's left eye was improving or looked "good." Thus, no evidence in the record would allow a reasonable juror to find that Defendant Dr. Crump disregarded any substantial risk of serious harm to Plaintiff due to his left eye issues during 2013.

---

[4] Some of the materials the Court relies on to establish undisputed relevant facts regarding Defendant Dr. Crump's treatment of Plaintiff are taken from evidence in the record that neither Defendant Dr. Crump nor Plaintiff cited in their summary judgment filings pursuant to Rule 56(c)(4).

[5] The facts the Court will refer to in the analysis portion of this opinion are taken from the "Relevant Undisputed Facts" section above.

The undisputed evidence further establishes that when Defendant Dr. Crump again saw Plaintiff in January 2014, he noted that Plaintiff's bleb "looked good," and that when he saw Plaintiff in February of 2014, he noted that Plaintiff's bleb was "much better" and requested a follow up appointment for Plaintiff with Dr. Singleton. Plaintiff then saw Dr. Singleton in April of 2014, at which time she noted that Plaintiff's filtering bleb was "causing [Plaintiff] ocular irritation," but had "no evidence of bleb leak or infection" and recommended that Plaintiff receive drops and gel ointment. Accordingly, no evidence in the record would allow a reasonable juror to find that Defendant Dr. Crump disregarded a substantial risk of serious injury to Plaintiff during this time period.

Plaintiff next saw Defendant Dr. Crump in July 2014, at which time Defendant Dr. Crump made a request for Plaintiff to be referred to a specialist for surgical correction of his bleb because it was "causing some dry eye" which was "not helped by artificial tears, gels or ointments" and this request was approved on August 8, 2014. Moreover, when Plaintiff still had not seen a specialist pursuant to this referral in December 2014, Defendant Dr. Crump checked on that request. Plaintiff then had a February 2015 appointment scheduled with Dr. Singleton that was cancelled due to bad weather and rescheduled in April 2015, at which time Dr. Singleton decided that she did not want to surgically remove the bleb on Plaintiff's left eye because his vision and eye pressure was good and she was concerned about possible complications, but agreed to refer Plaintiff to an eye specialist.

Thus, the medical records establish that during this time period, Defendant Dr. Crump recognized that his and/or Dr. Singleton's treatment of Plaintiff's bleb through the

use of drops and gels was not alleviating Plaintiff's left eye irritation and that Plaintiff therefore needed new or additional treatment. Defendant Dr. Crump accordingly took the reasonable steps of referring Plaintiff to a specialist and specifically requesting surgical removal of the bleb to abate Plaintiff's left eye irritation. While Plaintiff did not see Dr. Singleton pursuant to this referral until approximately six months after it was approved, no evidence in the record would support a reasonable jury finding that this delay was due to Defendant Dr. Crump's disregard of a substantial risk of harm to Plaintiff. Moreover, nothing in the record suggests that Defendant Dr. Crump had any involvement in treating Plaintiff after December 2014 until Dr. Lane called him on June 24, 2015, and he recommended that Plaintiff be taken to an ophthalmologist.

Also, even making the reasonable inference in favor of Plaintiff that his sworn statement at his deposition that Defendant Dr. Crump was the only person who recognized that Plaintiff needed additional medical treatment for the bleb on his left eye is evidence that Defendant Dr. Crump recognized a substantial risk of harm to Plaintiff due to his left eye issues, Plaintiff further testified that Defendant Dr. Crump "went above and beyond" and "did what he could do" to treat Plaintiff's left eye issues. Thus, despite Plaintiff's apparent disagreement with the treatment that Defendant Dr. Crump provided him, the undisputed evidence in the record establishes that Defendant Dr. Crump was not deliberately indifferent to a substantial risk of harm to Plaintiff, but rather took reasonable measures to abate any risk of harm to Plaintiff that he perceived.

Accordingly, Defendant Dr. Crump's his motion for summary judgment [Doc. 56] will be **GRANTED**.

C.     **Defendant Corizon**

Defendant Corizon seeks summary judgment on Plaintiff's claims on the grounds that (1) they are time-barred; (2) Plaintiff failed to exhaust his administrative remedies; and (3) Defendant Corizon did not violate Plaintiff's Eighth Amendment rights [Doc. 69]. In support thereof, Defendant Corizon filed a portion of Plaintiff's medical records, a portion of Plaintiff's deposition, a TDOC grievance policy, and a sworn declaration from Jeffrey Scott King in which he states that Defendant Corizon stopped providing medical care, except mental health services, at MCCX on September 8, 2013, and that Plaintiff has not sued any Corizon employees [Docs. 69-1–4].

In his response in opposition to this motion, Plaintiff questions his medical treatment during the time period in which Defendant Corizon provided medical services at MCCX but cites no evidence in the record from which a reasonable jury could find that Defendant Corizon is liable for any violation of Plaintiff's constitutional rights with regard to that treatment [Doc. 83 p. 8–9, 10–11], and no such evidence is apparent from the record.

Accordingly, Defendant Corizon's motion for summary judgment [Doc. 68] will be **GRANTED**.

D.     **Defendant Centurion**

Defendant Centurion seeks summary judgment on the ground that Plaintiff does not have evidence that its custom or policy was the moving force behind any violation of

Plaintiff's constitutional rights as required for a corporation acting under color of state law to be liable for a constitutional violation under § 1983 [Doc. 74]. In his response in opposition to this motion, Plaintiff does not cite any evidence from which a reasonable jury could find that a custom or policy of Defendant Centurion caused any violation of his constitutional rights [Doc 84], nor is any such evidence apparent from the record. To the contrary, Plaintiff states in his response in opposition to Defendant Centurion's motion for summary judgment that "[o]f course Centurion does not have a policy in place that results in 'deliberate indifference' to Plaintiff's or any other inmates['] medical need" [Doc. 84 p. 1–2].

Accordingly, Defendant Centurion's motion for summary judgment [Doc. 73] will be **GRANTED**.

## V. CONCLUSION

For the reasons set forth above:

1. The Clerk is **DIRECTED** to update the Court's docket sheet to name Defendant Byrge, rather than Houston-Fagan;

2. Defendants' pending motions for summary judgment [Docs. 56, 68, 70, and 73] are **GRANTED**; and

3. All other pending motions and objections [Docs. 51, 76, 82, 91, and 92] are **DENIED and/or OVERRULED as moot**, as only Plaintiff's claims against Defendants Niner and Walker remain herein.

**IT IS SO ORDERED.**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE